UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY PEARSON, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>v.<br><br>P.F. CHANG'S CHINA BISTRO, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>                      Defendants. | Case No.: 13-CV-2009 JLS (MDD)<br><br>**ORDER: (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS ACTION; (2) PRELIMINARILY APPROVING PROPOSED SETTLEMENT; (3) APPROVING NOTICE TO CLASS; AND (4) SETTING FINAL APPROVAL HEARING DATE**<br><br>(ECF No. 128) |

Presently before the Court is Plaintiffs Joy Pearson, (in Case No. 13-cv-2009), and Linda Andrade and Liliana Avila's, (in Case No. 12-cv-2724), Unopposed Motion for Order Granting Preliminary Approval of Class Action Settlement. (ECF No. 128.) The Court vacated the hearing and took the motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 130.) Plaintiffs also filed supplemental briefing at the Court's request. (ECF No. 131.) Because the settlement is fundamentally fair, reasonable, and adequate, the Court **GRANTS** the Parties' Preliminary Settlement Motion.

/ / /

# BACKGROUND

On November 7, 2012, Plaintiffs Linda Andrade, and Liliana Avila filed a class action suit alleging violations of California's Labor and Business and Profession Codes on behalf of all non-exempt employees of Defendant P.F. Chang's China Bistro, Inc. ("MTN," ECF No. 128-1, at 12.)[1] On July 23, 2013, Plaintiff Joy Pearson filed a class action suit in San Diego Superior Court, which Defendant removed to the Southern District of California. (*Id.* at 14.) Additionally, a third class action, *Kidner et al. v. P.F. Chang's*, No. RIC 1500355, was filed in state court, removed to the Central District of California, and subsequently remanded back to state court.[2] (*Id.* at 16.) Defendant operates several restaurants in California. (First Am. Compl. ("FAC"), ECF No. 20, ¶ 9.) The proposed class includes all non-exempt, hourly employees in Defendant's restaurants in California who worked at any time during the period July 22, 2009 through the date which this Court grants preliminary approval ("Settlement Class" / "Class Members"). (MTN 11.)

Plaintiffs, across all three actions, assert seven claims for relief under various provisions of California law:

1. Failure to Provide Legally Compliant Meal Periods
2. Failure to Pay Wages Due, Including Minimum Wages, Regular Time, Overtime, Double Time, and Other Types of Wages
3. Failure to Pay Split Shift Premiums
4. Failure to Pay Reporting Time Wages
5. Waiting Time Penalties

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

[2] The Court requested supplemental briefing as to whether it could approve a class action settlement in state court. (ECF No. 130.) In response, Plaintiffs point the Court to *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–88 (9th Cir. 1992), as standing for the proposition that a federal court may approve a settlement that releases claims that are not within its subject matter jurisdiction. (ECF No. 131, at 4.) This case is on point. The Court does not have subject matter jurisdiction over the parties in the *Kidner* action. However, the claims asserted against Defendant in the *Kidner* action arise from the same common nucleus of operative fact as *Pearson* and *Andrade*. Therefore, the Court may release a claim "based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *Class Plaintiffs*, 955 F.2d at 1287 (emphasis omitted) (quoting *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)).

6.   Unlawful Repayment of Wages
7.   Cal. Bus. & Prof. Code § 17200, *et seq.*
8.   Failure to Provide Accurate Wage Statements
9.   Violation of the Private Attorney General Act

(*See id.* at 10.)  Plaintiffs generally allege that Defendant has failed to set various wage-related policies.  For example, Plaintiffs allege that Defendant has no "split-shift interval policy," which harmed Plaintiffs because they were not compensated during occasions they worked split shifts.  (Third Am. Compl. ("TAC"), ECF No. 70, ¶ 26.)  Defendant did not provide Plaintiffs a duty free meal period or compensate one hour of pay to compensate for the loss of the meal period.  (*Id.* ¶¶ 35–36.)  Next, Defendant allegedly did not provide Plaintiffs a rest period at the legally mandated rate of ten minutes for every four hours of work.  (*Id.* ¶¶ 47–49.)  Plaintiffs also allege that Defendant did not timely pay employees upon their discharge from employment with Defendant, as required by California law.  (*Id.* ¶¶ 61–65.)  Finally, Defendant did not provide Plaintiffs accurate itemized wage statement. (*Id.* ¶¶ 71–72.)

The Parties conducted voluminous discovery and motion practice, as well as arbitration, over the course of five years.  (MTN 11.)  They also engaged in two full-day mediations, once on August 18, 2016 and once on August 14, 2017.  (*Id.* at 18.)  The latter mediation was successful and resulted in a non-reversionary settlement of $6.5 million. (*Id.* at 19.)

Plaintiffs present to the Court an unopposed Motion for an Order: (1) conditionally certifying the proposed Settlement Class, defined below; (2) preliminarily approving the proposed settlement of $2.9 million; (3) approving the proposed Notice and directing distribution of the Notice and related documents; (4) approving CPT Group, Inc. as Claims Administrator; (5) appointing Plaintiffs' counsel as class counsel; (6) appointing Plaintiffs

as class representatives; and (7) setting a schedule for final approval.[3]  (MTN 11–12.) Although Defendant does not oppose certification of a Settlement Class and the proposed Settlement, Defendant continues to deny all allegations of unlawful conduct alleged in the Complaint, and does not admit or concede that it has, in any manner, violated federal or California laws or committed any other unlawful action that would entitle Plaintiffs or any class to any recovery.

## SETTLEMENT TERMS

The Parties have submitted a comprehensive settlement document with approximately forty pages of substantive terms, (Stipulation of Settlement and Release ("Settlement Agreement"), Ex. A, ECF No. 128-2, at 24–64), and a nine-page proposed class notice, (Notice of Class Action Settlement, Ex. B., ECF No. 128-2, at 74–83).  The settlement provides monetary relief but no programmatic relief.

Defendant proposes to pay a Maximum Settlement Fund of $6,500,000.00.  (MTN 19.)  From this amount will be deducted: (a) all Settlement payments to Class Members eligible for Settlement payments; (b) the Class Representative incentive payment approved by the Court; (c) Class Counsel's attorneys' fees and expenses approved by the Court; (d) administration fees and expenses; and (e) payment made to the State of California Labor Workforce and Development Agency ("LWDA").  (*See* Settlement Agreement ¶¶ III.L.2– 6.)  Defendant will automatically make Settlement payments to Class Members (unless they choose to opt out) based on the following formula:

> Using the Class Data, the Settlement Administrator will calculate the total Compensable Workweeks for all Settlement Class Members.  The respective Compensable Workweeks for each

---

[3] Plaintiffs also request the Court judicially notice twenty-one documents.  (See ECF No. 128-3).  Under Federal Rule of Evidence 201, the court may take judicial notice of "a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of filings in other courts.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)).  Plaintiffs' twenty-one filings come from judicial filings in both federal and state court.  (ECF No. 128-3, at 6.)  Accordingly, the Court **GRANTS** Plaintiffs' Request for Judicial Notice, (ECF No. 128-3).

Settlement Class Member will be divided by the total Compensable Workweeks for all Settlement Class Members, resulting in the Payment Ratio for each Settlement Class Member. Each Settlement Class Member's Payment Ratio will then be multiplied by the Net Settlement Amount to calculate each Settlement Class Member's estimated Individual Settlement Payment.

(1) Settlement Class Members are not eligible to receive any compensation other than Individual Settlement Payments from this Settlement, and they will receive Individual Settlement Payments if they do not submit timely and valid requests for exclusion.
(2) If any Class Members submit requests for exclusion, each Settlement Class Member will have his or her Individual Settlement Payment increased pro-rata based on Compensable Workweeks such that the aggregate of all Individual Settlement Payments paid to Settlement Class Members is equal to the Net Settlement Amount.

(*Id.* ¶ III.L.2.a.)  The check will escheat to the State of California Department of Industrial Relations Unpaid Wages Fund if the Class Member fails to cash his or her check within 180 days after it is mailed.  (*Id.* ¶ III.L.2.e.)

## RULE 23 SETTLEMENT CLASS CERTIFICATION

Before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

Class actions are governed by Federal Rule of Civil Procedure 23.  To certify a class, each of the four requirements of Rule 23(a) must first be met.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Next, in addition to Rule 23(a)'s requirements, the proposed class must satisfy the requirements of one of the subdivisions of Rule 23(b). *Zinser*, 253 F.3d at 1186. Here, Plaintiffs seeks to certify the Settlement Class under subdivision Rule 23(b)(3), which permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court addresses each of these requirements in turn.

## I.    Rule 23(a)(1): Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

Here, the proposed Settlement Class consists of approximately 17,000 individuals, all of whom were (or are currently) employed by Defendant. (MTN 24.) Accordingly, joinder of all members would be impracticable for purposes of Rule 23(a)(1), and the numerosity requirement is satisfied.

## II.    Rule 23(a)(2): Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality requires that "the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts

coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, the Parties have carefully defined the Settlement Class to encompass all employees adversely affected by the allegedly fraudulent policies and practices set forth above. (*See* MTN 24–26.) Critically, Defendant maintained uniform policies that applied to all non-exempt employees in California. (*Id.* at 24–25.) Additionally, Defendant allegedly maintained a uniform practice of failing to pay wage premiums for meal and rest period violations, split shift violations, and premium pay violations. (*Id.* at 25 (citing *Safeway, Inc. v. Superior Court of L.A. Cnty.*, 238 Cal. App. 4th 1138, 1140 (Ct. App. 2015); and *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (Ct. App. 2012)).) All common questions thus revolve around whether the alleged fraudulent policies and practices in fact were fraudulent and impacted the class members. Accordingly, it is appropriate for these issues to be adjudicated on a class-wide basis, and Rule 23(a)(2) is satisfied.

## III. Rule 23(a)(3): Typicality

To satisfy Federal Rule of Civil Procedure 23(a)(3), Plaintiffs' claims must be typical of the claims of the Class. The typicality requirement is "permissive" and requires only that Plaintiffs' claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (citation omitted).

Here, Plaintiffs are former P.F. Chang's employees, (TAC ¶ 7), whose claims allegedly arise out of the same underlying policies and practices as those pertaining to the proposed Settlement Class. (MTN 27.) Accordingly, Plaintiffs' claims are typical of the

claims of the members of the proposed Settlement Class, thus satisfying Rule 23(a)(3).

## IV.    Rule 23(a)(4): Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that the named representatives fairly and adequately protect the interests of the class. "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). To determine legal adequacy, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Here, there is no reason to believe that the named representative and Class Counsel have any conflict of interest with the proposed Settlement Class members. The named representatives' claims are consistent with the other hourly employees they seek to represent. (MTN 27.) There is also no reason to believe that the named representative and Class Counsel have thus far failed to vigorously investigate and litigate this case. Plaintiffs have retained competent counsel, who have conducted extensive discovery, arbitration, motion practice, and mediation in this case. (*Id.* at 27–28.) Furthermore, Class Counsel have significant class action litigation experience, are knowledgeable about the applicable law, and will continue to commit their resources to further the interests of the Class. (*Id.* at 27.) Accordingly, the named representatives and Class Counsel adequately represent the proposed Settlement Class members, and Rule 23(a)(4)'s adequacy requirement is met.

## V.    Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### A.    *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

Here, the common issues include, but are not limited to, the following:

> (1) whether Class Members paystubs were inaccurate and did not otherwise comply with the California Labor Code section 226; (2) whether the Defendant's "Meal Period Waiver Agreement" was lawful; (3) whether Class members are entitled to overtime compensation for certain hours worked; (4) whether Class members are entitled to premium pay wages for noncompliant meal and rest breaks, split shifts, and reporting time; (5) whether Defendant was willful in its failure to pay all compensation due to Class members

(MTN 28.) Further, for purposes of settlement, Class Members are not required to prove any evidentiary or factual issues that could arise in litigation. Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

## B.    Superiority

The final requirement for certification pursuant to Federal Rule of Civil Procedure 23(b)(3) is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority inquiry requires the Court to consider the four factors listed in Rule 23(b)(3):

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

*See also Zinser*, 253 F.3d at 1190. A court need not consider the fourth factor, however, when certification is solely for the purpose of settlement. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1066 n.12 (C.D. Cal. 2010); *see also Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). The superiority inquiry focuses "'on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis.'" *Zinser*, 253 F.3d at 1190 (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1780, at 562 (2d ed. 1986)). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Here, Class Members' claims involve the same issues arising from the same factual bases. Class Members claims' are of relatively small value and Class Members likely are not aware of their potential claims. (MTN 30 (citing, e.g., *Noll v. eBay, Inc.*, 309 F.R.D. 593, 604 (N.D. Cal. 2015)).) If Class Members' claims were considered on an individual basis, almost 17,000 cases would follow a similar trajectory, and each would come to a similar result. Furthermore, individual cases would consume a significant amount of the Court's and the Class Members' resources. It is also likely that Class Members would not pursue litigation on an individual basis due to the high costs of pursuing individual claims. The interests of the Settlement Class Members in individually controlling the litigation are minimal, especially given the same broad-based policy and practices would be at issue. Given all of the above, class treatment is the superior method of adjudicating this controversy, and the superiority requirement of Rule 23(b)(3) is met.

## VI. Conclusion

For the reasons stated above, the Court finds certification of the Settlement Class proper under Rule 23(b)(3). Accordingly, the Court **CERTIFIES** the Settlement Class for settlement purposes only.

## RULE 23 PRELIMINARY FAIRNESS DETERMINATION

Having certified the Settlement Class, the Court must next make a preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e). Relevant factors to this determination

include:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).[4] Furthermore, due to the "dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative," any "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Id.* Additionally, although in the present case the Court has not been presented with formal applications for Class Counsel's attorney fees or class service awards, the Court nonetheless considers these potential fees because they form part of the settlement agreement.

## I. Strength of Plaintiffs' Case

In order to succeed on the merits, Plaintiffs would have to prove that Defendant's practices and policies were fraudulent and that Defendant failed to provide various wage statements and pay. (*See generally* TAC.) Defendant denies any wrongdoing. (*See generally* "Answer to TAC," ECF No. 72.) Plaintiffs, however, estimate Defendant's potential liability exposure on the underlying Labor Code claims to be approximately $13,033,200.00. (MTN 38 (citing Declaration of Tyler Belong ("Belong Decl."), ECF No. 128-2, ¶ 76).) Thus, the Settlement Amount represents approximately half the value of the

---

[4] Plaintiffs cite a different four-factor analysis than the Court applies. (*See* MTN 31 (citing *Deaver v. Compass Bank*, 2015 WL 4999953, at *6 (N.D. Cal. Aug. 21, 2015)).) Plaintiffs' four-factor analysis derives from *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007), which in turn relies on *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001). While there is some overlap in the factors, the Court applies the Ninth Circuit's standard from *Hanlon*.

Class Members' most probable claims. (*Id.*) Additionally, the Settlement is the result of arm's-length negotiations conducted over five years, including each Party's individual discovery and valuation of the case and two full-day mediation sessions before an experienced mediator. (*Id.* at 38–39.) Given the disagreement between the Parties and neutral third-party evaluation of the same, the Court thus finds that this factor weighs in favor of the $6.5 million settlement being fair, reasonable, and adequate.

## II. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Were the case to proceed to further litigation rather than settlement, the Parties would each bear substantial risk and a strong likelihood of protracted and contentious litigation. Plaintiffs point to several opinions recently issued by the California Court of Appeal concerning Private Attorney General Act ("PAGA") claims that could have a substantial impact on this case if it were to go forward. (*Id.* at 32 (citing, e.g., *Esparza v. KS Indus., L.P.*, 13 Cal. App. 5th 1228 (Ct. App. 2017)).) Plaintiffs suggest that *Esparza*, and others like it, threaten the continued viability of the class claims. (*Id.* at 33.) Even though the Parties have agreed to settle this action, they fundamentally disagree regarding the validity of Plaintiffs' claims. Additionally, the Parties document a number of risks in litigating Plaintiffs' claims—including the fact that a class might not even be certified, Plaintiffs may lose at trial, and Defendant is likely to appeal any adverse orders or judgment—and thus argue that the present Settlement affords class members at least some compensation where there might be none. (*Id.* at 35.) Indeed, the fact that Defendant disputes all aspects of Plaintiffs' claims, including the propriety of class certification in the absence of the settlement agreement, suggests that these issues would be vigorously (and therefore costly) litigated were there to be further litigation. Given the foregoing, this factor weighs in favor the settlement being fair, reasonable, and adequate.

## III. Risk of Maintaining Class Action Status Throughout Trial

The Parties dispute whether the classes can be validly certified in the absence of the Settlement Agreement. Implicit in this disagreement is the likelihood of initial challenges to class certification and the potential for decertification motions even if class status is

granted.  Weighed against the fact that Defendant does not oppose a finding that the class elements are met for purposes of this settlement, this factor also weighs in favor of the settlement being fair, reasonable, and adequate.

**IV.  Amount Offered in Settlement**

Defendant has agreed to pay $6.5 million to settle this lawsuit.  (*Id.* at 19.)  The crux of Plaintiffs' claims is that Defendant failed to pay the Class Members the entirety of their earned wages as well as failed to adhere to other wage-related policies.  As previously discussed, Plaintiffs calculate that the claims most likely to succeed at trial are worth approximately $13 million; thus, the Class Members' recovery will be about half the value of the claims.  (*Id.* at 38.)  Additionally, Plaintiffs point out that after the lawsuits were filed, Defendant apparently began paying its current employees premiums for missed meal and rest periods.  (*Id.*)  Thus, there has already been some tangible benefit resulting from these lawsuits.  Accordingly, this factor weighs in favor of the settlement being fair, reasonable, and adequate.

**V.  Extent of Discovery Completed and Stage of Proceedings**

Prior to the agreed-upon settlement, the Parties engaged in substantial discovery, including hundreds of written discovery requests, responses and supplemental responses, and depositions.  (*Id.* at 12, 14.)  The Parties engaged in substantial motion practice, including an appeal to the Ninth Circuit in the *Pearson* action.  (*Id.* at 14.)  And as discussed, the Parties twice engaged a neutral third-party mediator who fully examined and discussed with each Party the strengths and weaknesses of each Party's case.  (*Id.* at 19.)  Both Class Counsel and Defense Counsel gained significant knowledge of the relevant facts and law throughout the discovery process and through independent investigation and evaluation.  Accordingly, it appears the Parties have entered into the Settlement Agreement with a strong working knowledge of the relevant facts, law, and strengths and weaknesses of their claims and defenses.  Given all of the above, this factor weighs in favor of the proposed settlement being fair, reasonable, and adequate.

/ / /

## VI. Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). And here, Class Counsel believes the Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Settlement Class. (Settlement Agreement ¶ III.Y.) Furthermore, in the present case the presumption of reasonableness is warranted based on Class Counsel's expertise in complex litigation, familiarity with the relevant facts and law, and significant experience negotiating other class and collective action settlements. Given the foregoing, and according the appropriate weight to the judgment of these experienced counsel, this factor weighs in favor the proposed settlement being fair, reasonable, and adequate.

## VII. Settlement Attorneys' Fees Provision

In the Ninth Circuit, a district court has discretion to apply either a lodestar method or a percentage-of-the-fund method in calculating a class fee award in a common fund case. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). When applying the percentage-of-the-fund method, an attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *see Fischel*, 307 F.3d at 1006. However, a district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel*, 307 F.3d at 1007.

In the present case, the Settlement Agreement specifies that Defendant will not oppose Class Counsel's request to the Court for approval of attorneys' fees in the amount equal to one-third (1/3) of the Maximum Settlement Amount ($2,166,66.67 out of $6,500,000), and reasonable costs in an amount not to exceed $100,000. (Settlement

Agreement ¶ III.L.4.) In support of this provision, Class Counsel argue that the provision is consistent with awards granted by other courts in the Ninth Circuit. (MTN 43–44 (citing, e.g., *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (stating that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark")).)

The benchmark award in Ninth Circuit for common fund cases is 25%. *Hanlon*, 150 F.3d at 1029. Class Counsel indicates they intend to apply for attorney's fees not to exceed one-third the class fund. (MTN 44.) The Court may adjust the benchmark where there are special circumstances. *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379. At this stage, the Court concludes that the provision is reasonable.[5] *See, e.g.*, *Vasquez*, 266 F.R.D. at 491.

## VIII. Class Representative Service Award Provision

The Ninth Circuit recognizes that named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate each incentive award individually, using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In the present case, the Settlement Agreement provides $2,500 each to Plaintiffs Joy Pearson, Linda Andrade, and Liliana Avila and $1,000 each to Plaintiffs Hunter Kidner, Lizette Vargas, Samantha Kidner, Madelene Geledzhyan, and Anissa Ramirez to be paid from the Maximum Payment, in addition to the Settlement payment they may otherwise receive as class members. (Settlement Agreement ¶ III.L.3.) This amount is well within the typical incentive awards amount. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D.

---

[5] However, the Court notes that Class Counsel will need to demonstrate their "special circumstances" to depart from the benchmark when they file their attorney's fees motion prior to the final approval hearing.

245, 267 (N.D. Cal. 2015).  The Class Notice states that class representatives will receive the "collective amount of $12,500.00 for their work and efforts in prosecuting this case, for undertaking the risks of payment of costs (in the event the outcome of this Lawsuit was not favorable), and a general release of all claims."  (Notice of Settlement, ECF No. 128-2, at 77.)  Given the foregoing, the Court concludes that the current Settlement Agreement Class Representative Payment provision should not bar preliminary approval of the Settlement Agreement.

## IX.    Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement regarding the Settlement Agreement.

### NOTICE OF CLASS CERTIFICATION AND SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Because the Court has determined that certification is appropriate under Rule 23(b)(3), the mandatory notice procedures required by Rule 23(c)(2)(B) must be followed.

Where there is a class settlement, Federal Rule of Procedure 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) ("[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.").

The Parties have agreed to notify the Class Members in writing by mailing all class members a Notice of Pendency of Class Action ("Notice") at the last known address the

Class Members provided to Defendant during their employment. (MTN 41.) Given that some Class Members may only read Spanish, the proposed Notice will also be translated into and distributed in Spanish. (*Id.* at 40–41.) The Parties have agreed to have the Settlement Administrator send the Class Notice Packets to all identified Class Members using the mailing address information provided by Defendant and that the Settlement Administrator will use the National Change of Address Database to update and correct identifiable address changes. (Settlement Agreement ¶ III.K.3.) If the packet is returned because of an incorrect address, the Settlement Administrator will re-mail the packet to the forwarding address affixed to the returned mail. (*Id.* ¶ III.K.4.)

The proposed Notice explains:

(i) the nature of the action; (ii) the definition of class certified; (iii) the class claims, issues, or defenses; (iv) that class members may object to the Settlement; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (v) the binding effect of a class judgment on class members under Rule 23(c)(3).

(*Id.*) While the Court generally finds the Notice sufficient, the Court expresses its concern as to the following provision. The Settlement Agreement requires anyone wishing to appear at the Final Approval Hearing to object according to the method specified in the Agreement. The method includes delivering a Notice of Intention to Appear no later than fifteen (15) calendar days prior to the hearing. (Settlement Agreement ¶ III.K.9.) The Notice of Intention to Appear also requires an objector to identify testimony, witnesses, and exhibits that will be offered at the Final Approval Hearing. (*Id.*) However, these requirements are absent from the Notice to the Class Members; there is no fifteen day requirement, there is no mention of testimony, witnesses, and exhibits, and no mention of a "Notice of Intention to Appear."[6] (*See* Notice, ECF No. 128-2, at 82–83.)

_____

[6] Further, the objection requirements are detailed in paragraph 16 of the Notice. (ECF No. 128-2, at 81.) At the end of paragraph 16 the Notice states, "If you wish to speak at the Final Approval Hearing, you

Having thoroughly reviewed the jointly drafted Notice, the Court finds that the method and content of the Notice comply with Rule 23, with the exception outlined above. Accordingly, the Court approves the Parties' proposed notification plan and will allow the Parties to file an amended Notice addressing the Court's concern.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, (ECF No. 128). The Court **ORDERS** as follows:

**1. PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AGREEMENT:** The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

**2. PRELIMINARY CLASS CERTIFICATION:** Pursuant to Federal Rule of Civil Procedure 23(b)(3), the action is preliminarily certified, for settlement purposes only, as a class action on behalf of the following Settlement Class Members with respect to the claims asserted in this Action:

> **Settlement Class:** All current and former non-exempt, hourly employees at P.F. Chang's China Bistro, Inc., who worked at any time during the period July 22, 2009 through May 21, 2018.

**3. CLASS REPRESENTATIVE, CLASS COUNSEL AND SETTLEMENT ADMINISTRATOR:** Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, Plaintiffs Joy Pearson, Linda Andrade, Liliana Avila, Hunter Kidner, Lizette Vargas, Samantha Kidner, Madelene Geledzhyan, and Anissa Ramirez as the Class Representatives, and Hogue and Belong, as Class Counsel. Additionally, the Court approves and appoints CPT Group, Inc. as the Settlement Administrator.

---

must also indicate in your objection letter that you intend to appear at the Final Approval Hearing. *See* Paragraphs 16 and 18, below." (*Id.*) Presumably Plaintiffs meant "*See* Paragraphs 17 and 18, below."

**4. NOTICE:** The Court approves the form and substance of the proposed notice set forth in the Settlement Agreement attached as Exhibit A and the Notice attached as Exhibit B to the Belong Declaration. (Exs. A, B, ECF No. 128-2.) The form and method for notifying the Class Members of the Settlement and its terms and conditions satisfies the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)—with the exception of the following. The Parties agreed to certain objection procedures, (*see* Settlement Agreement ¶ III.K.9), and the salient details concerning those objection procedures appear to be omitted from the Notice. The Parties **SHALL** file an amended notice on or before <u>seven (7) days</u> from the date when this order is electronically docketed addressing the Court's concern. The Court will then evaluate and approve Plaintiffs' amended notice.

Other than the preceding discussion, the Court finds that the Notice Procedure submitted by the Parties constitutes the best notice practicable under the circumstances. As provided in the Settlement Agreement, the Settlement Administrator **SHALL** provide notice to the Class Members and respond to Class Member inquiries.

Within twenty-one (21) days of the date on which the Court approves amended Notice, Defendant **SHALL** provide the Settlement Administrator with the Class Data and within twenty-one (21) days from the receipt of the Class Data the Parties **SHALL** disseminate the Notice in the form attached as Exhibit B and in the manner and form provided in the Settlement Agreement.

**5. FINAL APPROVAL HEARING:** the Court shall conduct a Final Approval Hearing <u>on October 4, 2018 at 1:30 p.m.</u> at 221 W. Broadway, Courtroom 4D, 4th Floor, San Diego, CA 92101, to consider:

    a.    the fairness, reasonableness, and adequacy of the proposed settlement;

    b.    Plaintiffs' request for the award of attorneys' fees and costs;

    c.    the Class Representative enhancement;

    d.    dismissal with prejudice of the class action with respect to Defendant; and

    e.    the entry of final judgment in this action.

At the Final Approval Hearing, the Parties shall also be prepared to update the Court on any new developments since the filing of the motion, including any untimely submitted opt-outs, objections, and claims, or any other issues as the Court deems appropriate.

The date and time of the Final Approval Hearing shall be included in the Notice to be mailed to all class members.

**6. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT:** No later than twenty-one (21) days before the Final Approval Hearing, the Parties shall file a Motion for Final Approval of Class Action Settlement. The Motion shall include and address any objections received as of the filing date. In addition to the class certification and settlement fairness factors, the motion shall address the number of putative Settlement Class members who have opted out and the corresponding number of claims.

**7. APPLICATION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS:** No later than twenty-one (21) days before the Final Approval Hearing, Class Counsel shall file an application for attorneys' fees, costs, and class representative service awards. Class Counsel shall provide documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled. Class Counsel should address the appropriateness of any upward or downward departure in the lodestar calculation, or a departure from the benchmark in a percentage-of-the-fund approach to awarding attorney fees. Class Counsel should be prepared to address any questions the Court may have regarding the application for fees at the Final Approval Hearing.

**8. MISCELLANEOUS PROVISIONS:** In the event the proposed settlement is not consummated for any reason, the conditional class certification shall be of no further force or effect. Should the settlement not become final, the fact that the Parties were willing to stipulate to class certification as part of the settlement shall have no bearing on, nor be admissible in connection with, the issue of whether a class should be certified in a non-

settlement context.

**9.     SCHEDULE:** The Court orders the following schedule for further proceedings:

| Event | Date |
| --- | --- |
| Defendant to Deliver Class List to Settlement Administrator | Within 21 days of the date on which the Court approves the amended Notice |
| Settlement Administrator to Send Notice to Class Members | Within 21 days of the date on which the Administrator receives the Class List |
| Last Day for Class Members to File Request for Exclusion from Settlement | No later than 45 days from the date of mailing the Notice |
| Last Day for Class Members to File Objections to the Settlement | No later than 45 days from the date of mailing the Notice |
| Last Day for Class Members to File Notice of Intention to Appear at Final Approval Hearing | No later than 15 days before the Final Approval Hearing |
| Parties to File Motion for Final Approval | No later than 21 days before the Final Approval Hearing |
| Class Counsel to File Motion for Attorneys' Fees and Costs and Incentive Fees | No later than 21 days before the Final Approval Hearing |
| Final Approval Hearing | October 4, 2018 at 1:30 p.m. |

**IT IS SO ORDERED.**

Dated:  May 21, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge